**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-25594-BLOOM/Elfenbein**

BRIDLINGTON BUD LTD.,

Plaintiff,

v.

THE PARTNERSHIPS, UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE A,

Defendants.

_____ /

## <u>ORDER ON MOTIONS TO DISMISS</u>

**THIS CAUSE** is before the Court on the Motion to Dismiss under Rule 12(b)(2), ECF No. [58] ("First Motion"), of the "Defendants listed on Exhibit 1"[1] ("Defendant Group No. 1"). Plaintiff Bridlington Bud Ltd. ("Plaintiff") filed a Response, ECF No. [64], to which Plaintiff attached supporting submissions.[2] Defendant Group No. 1 filed a Reply, to which they attached supporting submissions.[3] ECF No. [69]. Also before the Court is Defendants liaory88668, haoxiang jia, shuqiluo, Zjkre, bvsih, wulong and yanwen's[4] ("Defendant Group No. 2" and,

---

[1] The "Defendants listed on Exhibit 1" include the following: Defendant No. 7 (QGJZVUNL Clothing, 10001685403), Defendant No. 17 (Raoguiyun clothing, 10001660345), Defendant No. 30 (GeMeng, 10002767961), Defendant No. 32 (JINGJINGWU, 10001680914), Defendant No. 38 (SiOU, 10002767994), Defendant No. 39 (DingCo, 10002874147), Defendant No. 43 (Weisi, 10002834522), Defendant No. 48 (ZINNAN, 10002765388), Defendant No. 49 (Feihan, 10002782864), Defendant No. 54 (Zhizh, 10002834559), Defendant No. 56 (Taohuayudianzi, 10002882029), Defendant No. 57 (JSldz, 10002787090), Defendant No. 64 (Jixinke, 10001613011), and Defendant No. 66 (PFWOWB, 10001615527). ECF No. [58] at 6.

[2] Plaintiff attached the Declaration of Andrew J. Palmer, along with certain transaction records. ECF No. [64-1].

[3] Defendant Group No. 1 attached the Declaration of Zhihao Cheng, along with certain transaction records. ECF No. [69-2].

[4] Defendant "yanwen" does not appear on Plaintiff's Schedule A and is therefore not named as a Defendant in this case. As such, the Court does not address "yanwen" in its analysis.

together with Defendant Group No. 1, "Defendants") Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) ("Second Motion"), ECF No. [67], to which they attached supporting submissions.[5] Plaintiff filed a Response, ECF No. [73], to which it attached supporting submissions.[6] The Court has reviewed the First Motion and Second Motion, the supporting and opposing briefs, the parties' respective submissions, the record in this case, and the applicable law. For the following reasons, the First Motion is granted, and the Second Motion is granted in part and denied in part.

## I.    BACKGROUND

In the Complaint filed on December 1, 2025, Plaintiff alleges Trademark Infringement in violation of 15 U.S.C. § 1114 (Count I) and False Designation of Origin in violation of 15 U.S.C. § 1125(a) (Count II). ECF No. [1] at 8–9. Plaintiff alleges that it owns the DESIGNICE trademark. *Id.* ¶ 1. Defendants "create numerous e-commerce stores that are advertising, offering for sale, and selling infringing and counterfeit DESIGNICE products to unknowing customers."[7] *Id.* ¶ 2. In order to avoid liability while doing so, Defendants conceal their identities as well as "the full scope and interworking of their illegal activities." *Id.*

The e-commerce stores in question "share distinctive identifiers, such as design elements and the similarities among the infringing products they offer." *Id.* This establishes a clear connection between the e-commerce stores and "suggests that Defendants' unlawful activities arise

---

[5] Defendant Group No. 2 attached product web pages for each seller from Defendant Group No. 2. ECF Nos. [67-1]–[67-6]. It also attached Declarations from each seller in Defendant Group No. 2. ECF No. [68-1]–[68-6].

[6] Plaintiff attached the Declaration of Andrew J. Palmer, ECF No. [73-1], along with certain transaction records. ECF No. [73-2].

[7] Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions. ECF No. [1] ¶ 12.

out of the same transaction, occurrence, or series of transactions or occurrences."[8] *Id*. Moreover, beyond the e-commerce stores operating under Defendants' aliases, Plaintiff has identified numerous additional "e-commerce stores offering infringing products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, DHgate, and Temu." *Id.* ¶ 14.

On February 4, 2026, Defendant Group No. 1 filed the First Motion and argues that the Complaint fails to adequately allege facts supporting the valid exercise of personal jurisdiction by this Court over Defendant Group No. 1. In particular, Defendant Group No. 1 argues it has "not made any sales or otherwise purposefully availed itself of the privilege of conducting business in the State of Florida for the purpose of allowing the Court to exercise personal jurisdiction over such Defendants." ECF No. [58] at 2. Plaintiff responds that Defendant Group No. 1's argument "ignore[s] the direct evidence of marketplace contacts with Florida: Walmart's own sales data establishing a Florida-directed purchase order." ECF No. [64] at 1. Defendant Group No. 1 replies that the parties making up Defendant Group No. 1 are independent, the cited evidence does not actually show the sale or shipment of an allegedly infringing product to Florida, and—ultimately— Defendant Group No. 1 has not made any successful transactions in Florida. ECF No. [69] at 1–5.

On February 23, 2026, Defendant Group No. 2 filed the Second Motion and similarly argues that Plaintiff lacks personal jurisdiction over it because "[m]ere accessibility of a website does not establish personal jurisdiction," and Defendant Group No. 2 "has no Florida sales." ECF No. [67] at 3. In addition, Defendant Group No. 2 argues that the Complaint fails to state a claim

---

[8] Defendants also use "substantially similar advertising and marketing strategies." ECF No. [1] ¶ 18. Specifically, they design their e-commerce stores—which operate under their aliases—"so that they appear to unknowing consumers to be authorized online merchants." *Id*. These stores "look sophisticated accept payment in U.S. dollars and/or funds from U.S. bank accounts." *Id*. They also "often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer." *Id*.

because it contains no specific allegations that Defendant Group No. 2 "used the mark falsely or counterfeited goods." *Id*. Plaintiff responds that at least four Defendants in Defendant Group No. 2 accepted orders from Florida customers, and Defendant Group No. 2's Rule 12(b)(6) arguments fail because they do not identify a deficiency in the Complaint but instead rely on a competing factual narrative. ECF No. [73] at 2.

## II.   LEGAL STANDARD

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted). "Where . . . the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Id*. (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

A motion to dismiss for failure to state a claim operates under Federal Rule of Civil Procedure 12(b)(6). When ruling on a Rule 12(b)(6) motion to dismiss, a court generally focuses on the complaint itself. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) ("A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss."). Federal Rule of Civil Procedure 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not impose a requirement of "detailed factual allegations," but it does demand "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4

To survive an attack by a Rule 12(b)(6) motion to dismiss, a complaint must therefore contain factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). But a complaint may proceed if it contains "enough factual matter (taken as true) to suggest" the elements of the stated claims. *Twombly*, 550 U.S. at 556.

In evaluating the complaint, a court accepts as true the plaintiff's factual allegations and any reasonable inferences drawn from those facts. *Martins v. Royal Caribbean Cruises Ltd.*, 174 F. Supp. 3d 1345, 1349 (S.D. Fla. 2016) (citing *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). A court need not accept the plaintiff's legal conclusions as true. *Iqbal*, 556 U.S. at 679. And while a court makes reasonable inferences in the plaintiff's favor, it need not make the same inferences as the plaintiff nor accept "unwarranted deductions of fact." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting *S. Fla. Water Dist. Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).

Although a court primarily considers only facts contained within the four corners of the complaint when ruling on a motion to dismiss, the court may consider additional documents when "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

### III.    DISCUSSION

#### A.  Defendant Group No. 1's Motion to Dismiss Under Rule 12(b)(2)

In the First Motion, Defendant Group No. 1 challenges personal jurisdiction. ECF No. [58]. Specifically, Defendant Group No. 1 points out that it (i) has no offices, bank accounts, agents, employees, or contractors in Florida or "pervasive or constant affiliation" with Florida for purposes of establishing general jurisdiction and (ii) has never sold any accused products to any person located in the State of Florida or actually interacted with this state, such that specific jurisdiction would be appropriate. *Id.* at 3. In support of its position, Defendant cites to a Declaration which avers, in relevant part, that "no item was shipped to the State of Florida." ECF No. [27-2] at 3.

Plaintiff responds that Walmart sales data reflects a Florida-directed purchase order. ECF No. [64] at 1. Specifically, Defendant No. 49 (feihan) generated a purchase order for the accused products which was later canceled due to a payment error. *Id*. The fact that the order was cancelled is of no consequence. *Id.* at 4. Moreover, because the Defendants are argued to be operating in concert, the sales of Defendants in Defendant Group No. 2 should be sufficient to establish jurisdiction over the Defendants in Defendant Group No. 1. *Id.* at 5. Fundamentally, Plaintiff points to "Florida-directed sales activity and accepted Florida-directed orders." *Id.* at 4.

Defendant Group No. 1 replies that the accessibility of its e-commerce stores in Florida alone is insufficient to establish personal jurisdiction. ECF No. [69] at 2. Moreover, Defendant Group No. 1 argues that Plaintiff's statements that the Defendants are acting in concert are conclusory. *Id.* at 3. Furthermore, Defendant Group No. 1 points out that its backend search of the Walmart database revealed no purchase order of the sort that Plaintiff mentions. *Id.* at 4. Next, Defendant Group No. 1 argues that even Plaintiff's evidence shows that "(i) no shipment event occurred, (ii) no carrier tracking number was ever provided, and (iii) no delivery date was effected" and no payment was ever received—that is, there was no successful transaction. *Id.* at 6. Finally, even if the single failed transaction were considered, it does not constitute significant enough sales

to establish personal jurisdiction. *Id.* at 6–7. And all of these long-arm considerations arise against the backdrop that exercise of personal jurisdiction would run afoul of due process. *Id.* at 7–8.

"A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (citing, *inter alia*, Fed. R. Civ. P. 4(e)(1), (h), and (k)). Florida's long-arm statute recognizes two kinds of personal jurisdiction over a non-resident defendant: general jurisdiction and specific jurisdiction. Fla. Stat. §§ 48.193(1)–(2). Relevant here, section 48.193(1)(a)(2) permits a Florida court to assert jurisdiction over any person who "commit[s] a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2).

A federal court therefore undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, meaning that sufficient minimum contacts exist between the defendant and the forum state to satisfy "traditional notions of fair play and substantial justice." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996) (citations omitted).

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp.*, 556 F.3d at 1274); *see also Meier ex rel. Meier*, 288 F.3d at 1268–69 (noting plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction, and "[a] prima facie case is established if the plaintiff presents enough evidence to withstand a motion

for directed verdict" (internal quotation marks omitted) (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990))).

As noted above, where a defendant challenges personal jurisdiction in a Rule 12(b)(2) motion to dismiss and submits evidence in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier ex rel. Meier*, 288 F.3d at 1269. The plaintiff must then "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (quoting *Bloom v. A. H. Pond Co.*, 519 F. Supp. 1162, 1168 (S.D. Fla. 1981)).

### i.      Florida's Long Arm Statute

The Court begins by analyzing whether Defendant Group No. 1's actions satisfy Florida's long-arm statute—specifically, the provision addressing the commission of tortious acts in the state. Fla. Stat. § 48.193(1)(a)(2).

Beginning with Plaintiff's *prima facie* case, Plaintiff alleges that Defendants directed business activities toward and conducted business with consumers within the State of Florida and this district through at least the internet-based e-commerce stores and fully interactive commercial internet websites accessible in Florida and operating under their Seller IDs. ECF No. [1] ¶ 7. Moreover, Plaintiff alleges that Defendants infringed Plaintiff's trademarks in this district by advertising, using, selling, promoting, and distributing counterfeit trademarks in the district through such stores and websites. *Id.* Under *Lovelady* and *Louis Vuitton*, those respective allegations are sufficient for Plaintiff to state a *prima facie* case of jurisdiction. *Louis Vuitton*, 736 F.3d at 1350 (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).

8

However, in its Response, Defendant Group No. 1 produces evidence that no sales have been completed in the state. Plaintiff's evidence—which the Court must credit—does not meaningfully rebut this but instead clarifies that one order was placed but ultimately canceled. The question, therefore, is whether the long-arm statute can be satisfied in circumstances such as this— namely, the absence of completed sales. The Court finds that it can in certain circumstances. *See GLD, LLC v. Gold Presidents, LLC*, No. 20-21617-CIV, 2021 WL 148737, at *2 (S.D. Fla. Jan. 15, 2021) (finding personal jurisdiction in the absence of sales, as "[t]he Court does not read [*Louis Vuitton*] as *requiring* a sale through the website in order to satisfy the Florida long-arm statute" (citation omitted)). In *Lovelady*, the Eleventh Circuit pointed out that "the alleged infringement clearly [] occurred in Florida by virtue of the website's accessibility in Florida." *Lovelady*, 544 F.3d at 1283. As such, mere accessibility of the website hosting the infringing conduct was "sufficient to invoke the Florida long-arm statute." *Id.* at 1284. After *Lovelady*, the Supreme Court of Florida clarified, in the defamation context, that the state's long-arm statute is not satisfied merely by a website's accessibility in Florida; the website must have been *viewed* in Florida. *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1215 (Fla. 2010).

Many courts since *Internet Solutions* have found Florida's long-arm statue satisfied only through a website's accessibility *plus actual access*. *See, e.g.*, *Volt, LLC v. Volt Lighting Grp. LLC*, 369 F. Supp. 3d 1241, 1245 (M.D. Fla. 2019) ("a non-resident who uses a website to infringe a trademark submits to Florida's jurisdiction if the website bearing the infringing mark is not only accessible in Florida but is viewed in Florida." (citation omitted)); *The Wigglebutt Inn, Inc. v. Plan B Solutions, LLC*, No. 2:11-cv-686-Ftm-99DNF, 2012 WL 13098423, at *2 (M.D. Fla. Sept. 27, 2012) (adopting the magistrate judge's report and recommendation and concluding that "the Florida Supreme Court [in *Internet Solutions*] set forth a new standard for determining personal

jurisdiction that examines whether a website is actually accessed, rather than merely accessible by a Florida resident"); *Mercury Enterprises, Inc. v. Vesta Mgmt. Group*, No. 8:12-cv-417-T-30MAP, 2012 WL 2087439, at *2 (M.D. Fla. June 8, 2012) (finding Florida's long-arm statute "satsifie[d]" because the plaintiff alleged that a Florida resident accessed in Florida the defendant's allegedly infringing website); *Edwards v. Trade Publishing Ltd.*, No. 6:10-cv-1883-Orl-31KRS, 2011 WL 5416190, at *9 (M.D. Fla. July 20, 2011) (acknowledging that the "Florida Supreme Court recently clarified the reach of Florida's long-arm statute" in *Internet Solutions* and requiring a plaintiff suing for copyright infringement to show that a Florida resident accessed the defendant's website), *adopted by* 2011 WL 5459549 (M.D. Fla. Aug. 18, 2011).

But many other courts continue to hold that mere accessibility is enough to satisfy Florida's long-arm statute. *See, e.g.*, *Frida Kahlo Corp. v. Pinedo*, No. 18-21826-CIV, 2021 WL 4147876, at *4 (S.D. Fla. Sept. 13, 2021); *Cross Match Techs., Inc. v. Crossresolve, LLC*, No. 15-81310-CIV-MARRA, 2016 WL 3216541, at *4 (S.D. Fla. June 10, 2016).

This Court has had occasion to decide the issue. *Vital Pharms., Inc. v. Bang Diamonds LLC*, No. 22-CV-60155, 2022 WL 3867894, at *3 (S.D. Fla. Aug. 30, 2022) (requiring mere accessibility); *PeopleShare, LLC v. Vogler*, 601 F. Supp. 3d 1276, 1283 (S.D. Fla. 2022) (requiring more than mere accessibility); *Alston v. www.calculator.com*, 476 F. Supp. 3d 1295, 1317 (S.D. Fla. 2020) (discussing favorably the mere accessibility approach); *CreeLED, Inc. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, 699 F. Supp. 3d 1357, 1361 (S.D. Fla. 2023) (discussing favorably the mere accessibility approach); *Oviedo v. Ramirez*, No. 21-CV-23750, 2022 WL 1641865, at *8 (S.D. Fla. May 24, 2022) (requiring more than mere accessibility); *Exotropin, LLC v. DP Derm, LLC*, No. 25-CV-20713, 2025 WL 2762902, at *5 (S.D. Fla. Sept. 26, 2025) (requiring mere accessibility).

10

The Eleventh Circuit has also addressed the issue. For instance, in *Louis Vuitton*, the court "appl[ied] our precedent in *Lovelady*," discussing and leaving unchallenged its finding that mere accessibility is sufficient, even as the Court referenced and was clearly aware of *Internet Solutions*. *Louis Vuitton*, 736 F.3d at 1353 n.9, 1354. In *Catalyst Pharmaceuticals, Inc. v. Fullerton*, the Eleventh Circuit discussed *Lovelady*, *Internet Solutions*, and *Louis Vuitton*. 748 F. App'x 947 (11th Cir. 2018). In doing so, it distinguished between defamation cases—the context directly addressed by *Internet Solutions*—and trademark infringement cases, indicating that the latter require mere "accessibility." *Id*. at 947. But in *Del Valle v. Trivago GMBH*, the Court adopted *Internet Solution*'s requirements in the context of trafficking in confiscated property, finding that accessibility plus access was required. 56 F.4th 1265, 1273 (11th Cir. 2022). Most recently, in *World Media Alliance Label, Inc.*, the Eleventh Circuit was at its most direct, discussing that "[a]lthough *Internet Solutions* arose in the context of defamation, . . .[i]ts holding has been applied to various other contexts, including claims like trademark infringement." No. 24-12079, 2025 WL 2102017, at *3 n.8 (11th Cir. July 28, 2025). The court then expressly applied the accessibility plus access framework to a copyright infringement claim. *Id.* at *3.

The Court follows the Eleventh Circuit's decision in *World Media Alliance* and finds that mere accessibility is not enough; actual viewing of the infringing product is required. Not only is this view supported by the Eleventh Circuit's most recent and direct discussion of the matter, it is also logical. Unless the allegedly infringing product is accessed in the state, there is no basis for concluding that a tort has been committed in the state. Here, until someone observes the allegedly infringing material, it is impossible to say that any injury has occurred in Florida or that any act has taken place in Florida. It is the viewing that "brings" the infringement into Florida.

Under this framework, the only indication in the Complaint that anyone in Florida accessed the relevant web pages is the allegation that Defendants made sales of infringing goods, and to sell an infringing good, a customer must have viewed the infringing product. ECF No. [1] ¶ 17. However, Defendant Group No. 1 has successfully shown that, apart from Defendant No. 49 (feihan), there is no evidence of any sale to any Florida resident. Plaintiff's responsive affidavits do not contradict this and do not point to other attempted or completed sales. As such, all Defendants in Defendant Group No. 1 except for Defendant No. 49 (feihan) are due to be dismissed. As to Defendant No. 49 (feihan), by contrast, the Court is satisfied that the relevant web page was accessed, as the attempted sale was undertaken via that web page. Thus, the Court proceeds to a due process analysis with respect to Defendant No. 49 (feihan).

### ii.      Due Process

The Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless "his contact with the state is such that he has fair warning that he may be subject to suit there." *Lovelady*, 544 F.3d at 1284 (quotation marks omitted). "This 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' [its] activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* (quotation marks and citation omitted). Compared with the long-arm statute analysis, the due process inquiry is "more restrictive." *Internet Sols. Corp.*, 39 So. 3d at 1216.

The Eleventh Circuit has distilled the due process analysis into a three-part test: "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play

12

and substantial justice.'" *Louis Vuitton*, 736 F.3d at 1355. "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

### I.      Prong One: "Arises Out of or "Relates to"

The first prong of the due process inquiry asks whether the plaintiff's claim "arises out of or relate[s] to at least one of the defendant's contacts with the forum." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (quotation marks omitted). "[A] relationship among the defendant, the forum, and the litigation is the essential foundation of *in personam* jurisdiction[.]" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Plaintiff's claims stem from Defendants' product offerings allegedly bearing Plaintiff's trademark. ECF No. [1]. Specifically, the claims stem from the products being offered for sale in Florida on Walmart's website and other websites. *Id.* ¶ 6. Although Defendant No. 49's contact with Florida is "minimal," it is the direct cause of Plaintiff's claims. *Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tennessee, Inc.*, 102 F. Supp. 3d 1264, 1272 (M.D. Fla. 2015). That is, Defendant No. 49 interacts with Florida via its offering and uncompleted sale of allegedly infringing products on a Florida-accessible website, and this offering forms the basis of Plaintiff's claims. "At least in the case of intentional torts, such claim-causing contact is sufficient to satisfy the first prong." *Id.*; *see also Louis Vuitton*, 736 F.3d at 1356 (finding the first prong "easily satisfied" due to a defendant's "advertising, selling, and distributing of" allegedly infringing goods in this state); *Honus Wagner Co. v. Luminary Grp. LLC*, No. 17-cv-61317, 2017 WL 6547899, at *10 (S.D. Fla. Dec. 21, 2017) (finding similar allegations sufficient "[u]nder the

13

broad standard applied for relatedness in this Circuit"). Thus, Plaintiff has established that its claims arise out of Defendant No. 49's contact with Florida via Walmart's website.

## II.    Prong Two: Purposeful Availment

In intentional tort causes such as this, "there are two applicable tests for determining whether purposeful availment occurred." *Louis Vuitton*, 736 F.3d at 1356. "Under the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Id*. "This occurs when the tort: '(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state.'" *Id*. (quoting *Lovelady*, 544 F.3d at 1285–88). Alternatively, under the "minimum contacts test," a court assesses the defendant's contacts with the forum state to determine whether those contacts: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Id.* at 1357.

As to the effects test, Plaintiff is a private limited liability formed in the United Kingdom with its principal place of business in the United Kingdom. ECF No. [1] ¶ 7. Moreover, the allegations do not suggest—beyond mere conclusory statements—that the infringing content contained on Walmart's website was *aimed* at Florida; feihan did not accept any payment from a Florida customer, nor did it actually sell anything to a Florida customer. In light of this, the Court finds that the effects test is not satisfied. *Evans v. Andy & Evan Indus., Inc.*, No. 15-CV-61013-WPD, 2016 WL 8787062, at *4 (S.D. Fla. July 15, 2016) (finding effects test not satisfied where the plaintiff was not a Florida resident and the infringing website content was not directed at Florida); *Tommy Bahama Grp., Inc. v. Eagle*, No. 3:09-CV-641-J-32JRK, 2010 WL 3340538, at

14

*7 (M.D. Fla. Aug. 23, 2010) (finding effects test not satisfied where "Plaintiff is not a Florida resident, and there is no indication the website included content particularly directed at Florida."); *DCS Real Est. Invs., LLC v. Bella Collina Events, LLC*, No. 5:14-cv-678-JSM-PRL, 2015 WL 628586, at *4 (M.D. Fla. Feb. 12, 2015) ("Because the plaintiff has failed to establish that [defendant] expressly aimed its trademark violation at [plaintiff], anticipating that it would cause harm to [plaintiff], the Court concludes that the 'effects' test has not been met."). Thus, the Court addresses the minimum contacts test.

Under the minimum contacts test, too, an exercise of personal jurisdiction is also inappropriate. Defendant No. 49 (feihan) has not consummated a sale in Florida, nor does it have any attachment to the state at all. It does not appear that Defendant No. 49 (feihan) actually tried to make a sale in Florida. Indeed, Defendant Group No. 1's supporting affidavit—which clarifies, but does not contradict, Plaintiff's affidavit—makes clear that, in the case of the one attempted Florida sale, "[t]he buyer never completed payment for this order, and without completed payment, the order would not have been processed or received by Feihan." ECF No. [69-2] ¶ 4. Thus, there is nothing beyond a generally accessible website to tie Defendant No. 49 to Florida.

A defendant does not establish minimum contacts merely through existing on a website. *Volt, LLC*, 369 F. Supp. 3d at 1248. "Adopting such a standard would open every company with a website to jurisdiction in virtually any state*." S.S. White Techs. Inc. v. Mahe Med. USA*, No. 8:22-CV-2955-VMC-TGW, 2024 WL 4643569, at *5 (M.D. Fla. Oct. 31, 2024). This conclusion is even stronger when, as here, Defendant No. 49 (feihan) does not itself operate the website.

The Court considers, as a point of contrast, *Lovelady*. 736 F3d 1342. In that case, the defendant "purposefully solicited business from Florida residents through the use of at least one fully interactive, commercial website," "received orders from multiple Florida residents to ship

15

goods into Florida," *and* in fact shipped those goods into the state. *Id.* at 1357. The court held that "[t]hese collective contacts establish that [the defendant] purposefully availed himself of the privileges of doing business in south Florida." *Id.*

Here, Defendant No. 49 (feihan) seemingly never received the order; more significantly, it did not ship any goods into Florida. Based on these considerations, the Court finds that Defendant No. 49 (feihan) has not purposefully availed itself of the privileges of doing business in Florda, nor could it reasonably anticipate being haled into court here.

As a final note, the Court is not compelled by Plaintiff's argument that it need not show contacts by each Defendant because Defendants were acting in concert. ECF No. [64] at 5. The basis of this contention is that each Defendant "shares a distinctive and uncommon email-address pattern ending in either 'wmt' or 'wt.'" *Id.* This allegation is conclusory, and it is not clear what the significance is of an email address pattern in the context of legal and operational affiliation. Thus, the Court finds that Plaintiff must establish jurisdiction over each Defendant in order to hale each into court in this district. Because it has not done so with respect to Defendant Group No. 1, all Defendants in Defendant Group No. 1 are due to be dismissed, and Defendant Group No. 1's First Motion is granted.[9]

### B. Defendant Group No. 2's Motion to Dismiss

In the Second Motion, Defendant Group No. 2 argues the Complaint should be dismissed for lack of personal jurisdiction and failure to state a claim. ECF No. [67] at 1. As to personal jurisdiction, Defendant Group No. 2 argues that "Plaintiff's harm (if any) is not tied to Florida-specific acts. Defendant has no Florida sales." *Id.* at 3. In support, Defendant Group No. 2 submits

---

[9] Because the Court finds no purposeful availment, the Court need not reach the issues of fair play or substantial justice.

Declarations from each Defendant in Defendant Group No. 2 averring that it has "not made any sales, shipped any products, or fulfilled any orders to customers with shipping addresses in the State of Florida for the accused 'DESIGNICE'-branded earrings or any other products listed under [its] seller account." *See, e.g.*, ECF No. [68-1] ¶ 7. As to failure to state a claim, Defendant Group No. 2 argues that Plaintiff has made "[n]o specific allegations [that] Defendants used the mark falsely or counterfeited goods," as "[a]ll evidence provided by Plaintiff shows the link of Plaintiff's own product page." ECF No. [67] at 3.

Plaintiff responds, first, that rather than being a case of "mere passive online accessibility," "Walmart sales data shows that at least four of the moving Defendants accepted orders placed by Florida customers through their Walmart Marketplace storefronts for the accused products." ECF No. [73] at 2. In support, Plaintiff points to a Declaration which avers that, based on Walmart sales data, (i) Defendant No. 13, wulong (Seller ID: 10002909259) accepted two orders placed by different customers in Florida, (ii) Defendant No. 41, shuqiluo (Seller ID: 10002872224), accepted an order placed by a customer in Florida, (iii) Defendant No. 42, Zjkre (Seller ID: 10002797033), accepted an order placed by a customer in Florida, and (iv) Defendant No. 67, liaory88668 (Seller ID: 10002826394), accepted an order placed by a customer in Florida, but the order was ultimately not fulfilled. ECF No. [73-1] ¶ 3. Second, Plaintiff argues that Defendant Group No. 2 has identified no weakness in the Complaint and instead relies on a competing factual narrative. *Id*.

### i.      Florida's Long Arm Statute

Plaintiff invokes jurisdiction based on the commission of a tortious act in the state of Florida. ECF No. [73] at 4 (citing Fla. Stat. § 48.193(1)(a)(2)).

Applying the same logic as above to the six Defendants in Defendant Group No. 2, the Court finds, first, that Defendants haoxiang jia and bvsih are due to be dismissed. Defendant Group

17

No. 2 provides affidavits from representatives of each of these two Defendants that no sales were completed in or any products shipped to Florida. *See* ECF Nos. [68-5] and [68-6]. This representation is uncontradicted by Plaintiff's affidavits, which point only to sales or attempted sales by the four *other* Defendants in Defendant Group No. 2. ECF No. [73-1] ¶ 3. Thus, with no evidence of sales and no other evidence or non-conclusory allegations that the relevant web pages were accessed, those Defendants cannot be said to have committed a tort in Florida. As such, the Court dismisses Defendants haoxiang jia and bvsih.

As to the remaining Defendants, however, Plaintiff has adduced competent responsive evidence that sales were either made or orders were accepted. *See* ECF No. [73-1] ¶ 3. The web pages were necessarily accessed, and this is sufficient to find the allegedly infringing activity existed in Florida for long-arm statute purposes. Thus, the Court turns to a due process analysis for the remaining four Defendants in Defendant Group No. 2.

### ii.      Due Process

As stated, the relevant inquiries for due process purposes are "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton*, 736 F.3d at 1355.

### I.      Prong One: "Arising Out of or "Relates to"

As to Defendants zjkre, liaory88668, shuqiluo, and wulong, the Court is satisfied that Plaintiff's claims arise out of or relate to their contacts with Florida. As the Supreme Court has explained, to satisfy this prong, "there must be 'an affiliation between the forum and the underlying

controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359–60 (2021) (internal citations omitted). The Court explained, "[t]he first half of [the arise out of or relate to] standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id.* at 362.

Considering this standard, the first prong of the due process test is satisfied. These Defendants from Defendant Group No. 2 allegedly offered infringing products for sale on a website available in Florida *and*, at minimum, accepted a Florida-based sale from that website. It is these exact contacts that constitute the but-for cause of Plaintiff's claims. There is a one-to-one relationship between Defendant Group No. 2's alleged Florida activities and Plaintiff's claims against the group. Thus, Plaintiff's claims arise out of or relate to Defendants Zjkre, liaory88668, shuqiluo, and wulong's contacts with the forum.

## II.   Prong Two: Purposeful Availment

As a general matter, a nonresident defendant's intentional tort can support the exercise of personal jurisdiction under the minimum contacts test even if it has no other contacts with the forum. *See Lovelady*, 544 F.3d at 1285. The Eleventh Circuit has not decided whether a single online sale into a forum state can form the "minimum contacts" necessary to support due process. And the Supreme Court "has strongly suggested that a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 888 (2011) (Breyer, J., concurring) (citing *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, Solano Cnty., 480 U.S. 102, 111, 112 (1987) (plurality opinion)).

19

In resolving this issue, the Court looks to reasoning from other circuits. In *Brothers & Sisters in Christ, LLC v. Zazzle, Inc.*, the Eighth Circuit indicated that a single sale was an insufficient contact to assert personal jurisdiction over a defendant. This is because there were no additional facts suggesting "purposeful, targeted action towards" the forum state or its customers. 42 F.4th 948, 953 (8th Cir. 2022). The contact was nothing more than "random, isolated, [and] fortuitous." *Id.* (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). Similarly, in *Admar International, Inc. v. Eastrock, L.L.C.*, the Fifth Circuit indicated that a single sale "is the type of isolated act that does not create minimum contacts." 18 F.4th 783, 788 n. 1 (5th Cir. 2021). The court addressed targeted advertising as important to the purposeful availment analysis. *Id.* at 787. The Sixth Circuit, in *AMB Media, LLC v. OneMB, LLC*, similarly indicated in dicta that "[w]here sales are particularly sporadic—'as little as a single transaction'—affirmative targeting of a forum may be necessary to constitute purposeful availment." No. 23-5607, 2024 WL 2052151, at *5 (6th Cir. May 8, 2024) (citation omitted).

By contrast, in *NBA Properties, Incorporated v. HANWJH*, the Seventh Circuit found a single sale of a trademark-infringing item sufficient to justify personal jurisdiction because the defendant had established an online store through Amazon, "unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so," and ultimately "filled the order, intentionally shipping an infringing product to the customer's designated Illinois address." 46 F.4th 614, 624 (7th Cir. 2022).

Here, the Court is satisfied that one or two sales involving an infringing work through a website accessible in Florida suffices to satisfy due process. In many ways, the question boils down to this: did the Defendants at issue take some other affirmative step demonstrating their intent to avail themselves of the privilege of doing business in Florida? Here, the Defendants at issue

20

"published a website accessible in Florida and *chose* to fulfill the order containing the infringing products into Florida." *Id.* (emphasis added). There is evidence that, beyond a mere generally accessible website, Defendants zjkre, liaory88668, shuqiluo, and wulong took affirmative steps demonstrating that they were purposefully availing themselves of the privilege of doing business in Florida, whether through accepting an order and/or actually fulfilling the order.[10] Those contacts are therefore sufficient to satisfy the minimum contacts test.

### III.   Fair Play and Substantial Justice

Where a Defendant has a "constitutionally sufficient contact with Florida," the Court must determine whether the exercise of jurisdiction over Defendant "comports with fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 320 (1945). "Relevant factors include the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Lovelady*, 544 F.3d at 1288 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

As noted above, the defendant bears the burden with respect to this prong; it must "make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1267. Here, Defendant Group No. 2 has not satisfied its burden. It has not articulated the burden placed on it in adjudicating the action in this district, let alone any other district in the United States. To the extent there is any burden

---

[10] That Defendant liaory88668's transaction was ultimately unfulfilled does not change the Court's analysis given the particular circumstances of the transaction. The evidence presented by Plaintiff indicates that Defendant liaory88668 "accepted an order" and that the order was only canceled because of "[s]eller suspension or termination." ECF Nos. [73-1] ¶ 3; [73-2] at 2. The implication is that this Defendant, unlike feihan—which apparently never even received the order, ECF No. [69-2] ¶ 4—intended to consummate the transaction but was unable to do so because of an action taken by a third-party. This constitutes intentional targeting of the forum state.

on Defendants zjkre, liaory88668, shuqiluo, and wulong based on litigating in a U.S. District Court, that alone is insufficient to offend traditional notions of fair play and substantial justice. *See Lovelady*, 544 F.3d at 1288 ("The Constitution is not offended by Florida's assertion of its jurisdiction over such nonresident tortfeasors." (citation omitted)). Moreover, that these Defendants are based in China or other countries does not change the Court's analysis, as "modern methods of transportation and communication reduce this burden significantly." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996) (citation omitted). Furthermore, "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Lovelady*, 544 F.3d at 1288. Although Plaintiff is not a Florida resident, the Complaint alleges Defendants sell infringing goods to Florida consumers. ECF No. [1] ¶ 6. That suggests that Florida has an interest in protecting its consumers from purchasing such goods, a factor that weighs in favor of the exercise of personal jurisdiction.

Accordingly, traditional notions of fair play and substantial justice would not be offended were the Court to exercise personal jurisdiction. Thus, the Court declines to dismiss the Complaint as against Defendants zjkre, liaory88668, shuqiluo, and wulong.

### iii.    Failure to State a Claim

Defendant Group No. 2 also suggests that the Complaint is due to be dismissed for failure to state a claim. ECF No. [67] at 3. Specifically, Defendant Group No. 2 alleges that all the links provided by Plaintiff in its Complaint tie back to Plaintiff's own product page, rather than reflecting product pages of Defendants in Defendant Group No. 2. *Id.* at 4. Plaintiff responds that "the seller aliases for the accused stores are displayed on the infringing evidence itself." ECF No. [73] at 7. Moreover, the Complaint broadly states a claim with sufficient factual detail. *Id.*

The Court agrees with Plaintiff and declines to dismiss the Complaint with respect to Defendants zjkre, liaory88668, shuqiluo, and wulong as Plaintiff plausibly states a claim. Plaintiff alleges that it owns the relevant trademark and attached said trademark. ECF No. [1] ¶¶ 1, 8; ECF No. [1-1]. Plaintiff alleges that these Defendants used Plaintiff's registered DESIGNICE mark without authorization in connection with the sale, offering for sale, distribution, or advertising of goods in a manner likely to cause confusion, specifically via Walmart Marketplace and other online platforms. *See generally id*. Those allegations are sufficient to state a claim. Indeed, Defendant Group No. 2 does not actually identify any *pleading* deficiency; instead, it effectively attempts to apply a summary judgment standard to the motion to dismiss stage, arguing that Plaintiff's allegations are insufficiently substantiated by the evidence they opted to provide. Questions about how the web pages actually worked and what they actually stated at the relevant times are not suitable for resolution at the motion to dismiss stage. So long as Plaintiff's attached evidence does not *contradict* its allegations—which it does not, as the infringing evidence bears the names of each Defendant—other defects in the attached evidence are not sufficient to justify dismissal.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendant Group No. 1's First Motion, **ECF No. [58]**, is **GRANTED**.

2. Defendant Group No. 2's Second Motion, **ECF No. [67]**, is **GRANTED IN PART** and **DENIED IN PART**. The Complaint, ECF No. [1], is dismissed as to Defendants Nos. 31 (haoxiang jia) and 34 (bvsih).

3. Defendants Nos. 42 (zjkre), 67 (liaory88668), 41 (shuqiluo), and 13 (wulong), shall file their Answers to the Complaint **by June 11, 2026.**

23

Case No. 25-cv-25594-BLOOM/Elfenbein

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 28, 2026.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:      Counsel of Record

24